United States District Court
Southern District of Texas

**ENTERED**

March 26, 2025

Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

In re INSTANT BRANDS ACQUISITION §
HOLDINGS INC., *et al.*, §
§
    Debtors. §
§  CIVIL ACTION NO. 4:24-CV-847
§
GUANGDONG   MIDEA   CONSUMER§   BANKRUPTCY CASE NO. 23-90716
ELECTRIC            MANUFACTURING§
COMPANY LIMITED, §
§
    Appellant.

**<u>MEMORANDUM OPINION AND ORDER</u>**

This is a bankruptcy appeal. The Court will refer to the appellants[1] collectively as

"Midea." The Court will refer to the reorganized debtors[2] collectively as "Corelle."

This appeal arises out of the bankruptcy court's denial of Midea's objection to

Corelle's reorganization plan. Over the course of several hearings and rounds of briefing,

the parties and the bankruptcy court distilled the relevant issues down to the question of

whether a group of purchase orders ("the purchase orders") are divisible from a master

supply agreement ("the supply agreement"). The parties presented their arguments to the

bankruptcy court based on a stipulated evidentiary record, and the bankruptcy court found

---

[1] The appellants are GuangDong Midea Consumer Electric Manufacturing Company Limited;
FoShan ShunDe Midea Electrical Heating Appliances Manufacturing Company Limited; and
Midea Electric Trading (Singapore) Co. Pte Ltd. (Dkt. 9 at p. 10).

[2] The reorganized debtors are Corelle Brands Acquisition Holdings LLC; Corelle Brands (Texas)
Inc.; Corelle Brands Acquisition Intermediate Holdings Inc.; Corelle Brands Holdings Inc.;
Corelle Brands (Charleroi) LLC; Corelle Brands LLC; Corelle Brands (Corning) LLC; Corelle
Brands (Latin America) LLC; EKCO Group, LLC; EKCO Housewares, Inc.; EKCO
Manufacturing of Ohio, Inc.; Corelle Brands (Canada) ULC; Corelle Brands (Canada) Holding
ULC; Corelle Brands ULC; and Corelle Brands (GHC) LLC. (Dkt. 29 at p. 2).

that the purchase orders are divisible from the supply agreement. Midea has appealed that

determination, and the Court **AFFIRMS** the bankruptcy court's judgment.

## I.    BACKGROUND

Corelle sells appliances and housewares, and Midea was one of Corelle's third-party

suppliers. (Dkt. 10-1 at pp. 87–88, 293). To formalize their relationship, Corelle and Midea

entered into the supply agreement, which provided that Corelle would order appliances

from Midea by placing purchase orders with Midea. (Dkt. 10-1 at p. 293). As the supply

agreement phrased it, each purchase order would "contain, at the minimum, date of order,

model number/name, quantity, price (as mutually agreed upon by the parties from time to

time), shipment date, and other shipment information that are sufficient for Midea to

arrange shipment[:]"

> 1.1    Customer may place purchase orders via fax, electronic mail and/or in such a manner as mutually agreed. Each purchase order shall contain, at the minimum, date of order, model number/name, quantity, price (as mutually agreed upon by the parties from time to time), shipment date, and other shipment information that are sufficient for Midea to arrange shipment.

Dkt. 10-1 at p. 294.

After receiving the purchase order, Midea could issue an invoice to Corelle based

on the information in the purchase order; and the invoice would "become binding on both

parties" only if Corelle signed and returned the invoice within the time specified by the

invoice (or within five business days if the invoice did not specify a time):

> 1.2    Midea may issue Pro Forma Invoice ("PI") based on purchase order and/or binding forecast issued hereunder. Once Customer signs and returns the PI within the time as required in the PI, or if the PI does not specify a time, within five (5) business days, the PI will become binding on both parties. If Customer fails to sign and return the PI within that time, the PI will not be binding upon both parties.

Dkt. 10-1 at p. 294.

The supply agreement also contained two sets of indemnity provisions. (Dkt. 10-1 at pp. 297–98). Under one set of indemnity provisions, Midea would compensate Corelle for losses caused by certain product recalls. (Dkt. 10-1 at p. 297). Under the other set of indemnity provisions, Midea would obtain a product liability insurance policy and indemnify Corelle against certain product liability claims. (Dkt. 10-1 at p. 298).

Midea and Corelle provided a stipulated evidentiary record to the bankruptcy court that contained "typical examples of" purchase order exchanges between Corelle and Midea. (Dkt. 10-1 at pp. 223–91). The attached examples show that Corelle added its own "Purchase Terms and Conditions" to its purchase orders when it sent those purchase orders to Midea. (Dkt. 10-1 at pp. 261–63). Corelle's added language provided that, with regard to a particular purchase order, Corelle's "Purchase Terms and Conditions" would "govern the purchase from [Midea]" of the products listed in the purchase order:

> **Order Acknowledgement required to be emailed to buyer's email listed above prior to Purchase Order Processing.**
> **Purchase Order and Line No must appear on all invoices, bills of lading, and packing slips.**
> **Vendor acknowledges and agrees the attached Instant Brands Inc Purchase Terms and Conditions are an integral part hereof, and govern the purchase from Vendor of those products and/or services by Instant Brands Inc reflected under "Material Description" in this Purchase Order.**

Dkt. 10-1 at p. 261.

Listed among Corelle's "Purchase Terms and Conditions" were broad indemnity provisions requiring Midea to defend and indemnify Corelle against "any claim made by any entity or person" arising out of or relating to the purchase order:

> 10. INDEMNIFICATION
> Vendor agrees to indemnify and defend Instant Brands against, and hold it harmless from, any liability, damage, cost, or expense resulting from any claim made by any entity or person (including the employees and agents of Instant Brands and Vendor) arising out of or relating to products purchase order. Without limitation of the foregoing sentence, Vendor shall indemnify, defend and hold Instant Brands harmless from any third party claims or investigations in connection with a breach by Vendor of any obligation or representation and warranty set forth in Section 9 above.

Dkt. 10-1 at p. 262.

Moreover, in response to one purchase order sent by Corelle, Midea indicated that there would be changes to the look and the price of the ordered items:

> Hi Lucy,
>
> The three po's are well received and CRD of 6/6 is confirmed.
>
> For item 112-0168-01 of po#10603077, there are some artwork changes and the price need to be updated. Hardy is checking the new price, and we will keep you posted when it is confirmed.
>
> Best regards.
> Jacob Cai 蔡怡宽

Dkt. 10-1 at p. 265.

When Corelle entered bankruptcy proceedings, it sold its appliances business and assigned the supply agreement to the purchaser. (Dkt. 10-1 at pp. 576, 580, 631, 1028). Midea objected to Corelle's reorganization plan on the ground that the plan improperly attempted to retain indemnification rights for Corelle that should have been transferred with Corelle's assignment of the supply agreement. (Dkt. 10-1 at pp. 1199–1202). After examining the parties' briefs and the joint stipulated evidentiary record, the bankruptcy court denied Midea's objection, finding that "the purchase orders are separable contracts under applicable law, such that the assumption and assignment of the [supply] agreement

did not assume and assign completed purchase orders." (Dkt. 10-1 at pp. 2082–83). Accordingly, the bankruptcy court continued, "the indemnity provisions remain and they remain with the separable purchase orders." (Dkt. 10-1 at p. 2083).

Midea appealed, contending that "the Supply Agreement was intended to be, and is, a single indivisible agreement incorporating all purchase orders made thereunder." (Dkt. 9 at pp. 55–56).

## II.    APPLICABLE LAW

An appeal to a federal district court from the bankruptcy court "shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts[.]" 28 U.S.C. § 158(c)(2). This Court reviews the bankruptcy court's legal conclusions *de novo* but may only disregard a fact finding made by the bankruptcy court if that fact finding is clearly erroneous. *In re Perry*, 345 F.3d 303, 309 (5th Cir. 2003). "A factual finding is not clearly erroneous if it is plausible in the light of the record read as a whole." *In re Ramba, Inc.*, 416 F.3d 394, 402 (5th Cir. 2005). The Fifth Circuit has emphasized that, under the "clearly erroneous" standard, this Court "may [not] weigh the evidence anew" and may only set aside the bankruptcy court's fact findings if it is "left with the definite and firm conviction that a mistake has been committed." *In re Perry*, 345 F.3d at 309 (quotation marks omitted); *see also Phillips Petroleum Co. v. Best Oilfield Services, Inc.*, 48 F.3d 913, 915 (5th Cir. 1995) (applying the "clearly erroneous" standard to a district court's findings of fact after a bench trial on briefs and stipulated facts).

The parties have cited cases from numerous jurisdictions, and they agree that "[t]he pertinent principles of contract law appear to be consistent across jurisdictions." (Dkt. 9 at p. 40; Dkt. 29 at p. 33). Accordingly, as Texas is the forum state, the Court will apply Texas contract law. *See Schneider National Transport v. Ford Motor Co.*, 280 F.3d 532, 536 (5th Cir. 2002) ("If the laws of the states do not conflict, then no choice-of-law analysis is necessary. Thus, the law of the forum state, Texas, should apply here as there is no conflict between the substantive state law of Texas and Pennsylvania as each requires that insurance contracts, like other contracts, be interpreted according to their plain meaning.") (citations and quotation marks omitted). "Under Texas law, a contract is divisible, or severable, when one party's performance consists of more than one distinct and separate item and the price paid by the other party is apportioned to each item." *Stewart Title Guaranty Co. v. Old Republic National Title Insurance Co.*, 83 F.3d 735, 739 (5th Cir. 1996) (quotation marks and brackets omitted). "If there is a single assent to a whole transaction involving several things, a contract is entire, but if there is a separate assent to each of the several things involved, it is divisible." *Johnson v. Walker*, 824 S.W.2d 184, 187 (Tex. App.—Fort Worth 1991, no writ).

"No one test or rule of law can be used to ascertain whether a contract is divisible or indivisible." *Stewart Title*, 83 F.3d at 739. "Determination of the issue depends primarily on the intention of the parties, the subject matter of the agreement, and the conduct of the parties." *Id.* The intent of the parties is the principal determinant of divisibility; and, if a contract is unambiguous, then its "language alone will generally be deemed to express the intent of the parties." *Id.* However, even though Texas courts generally look to the parties'

conduct only to resolve an ambiguity in a contract, courts undertaking the divisibility analysis under Texas law examine the parties' conduct even if the contract is unambiguous. *See id.* at 740; *see also Petroleum Exploration International, S.A. v. Canrig Drilling Technologies, Ltd.*, No. 4:08-CV-1283, 2009 WL 4716043 at *2 n.3 (S.D. Tex. Dec. 7, 2009) (noting that, in *Stewart Title*, the Fifth Circuit "analyzed [the] parties' conduct in determining severability of a contract under Texas law even without a finding of ambiguity"). A finding that a contract is divisible is reviewed for clear error. *See Chapman v. Tyler Bank & Trust Co.*, 396 S.W.2d 143, 147 (Tex. Civ. App.—Tyler 1965, writ ref'd n.r.e.) ("Although the trial court did not specifically find that the 'Pike' contract was divisible and a separate contract, the judgment in favor of the Tyler Bank supplied the finding by implication and there being evidence of probative force in support thereof, such implied finding is binding upon the appellate court.").

## III.    ANALYSIS

The Court concludes that the bankruptcy court did not clearly err in finding that the purchase orders are divisible from the supply agreement. The supply agreement provides that a purchase order only creates a binding agreement if Midea issues an invoice to Corelle in response to the purchase order and then Corelle signs and returns that invoice within a specified time. (Dkt. 10-1 at p. 294). The contractual language is permissive, not mandatory; Corelle "may" place a purchase order, in response to which Midea "may" issue an invoice. (Dkt. 10-1 at p. 294). The material terms of each purchase—"date of order, model number/name, quantity, price (as mutually agreed upon by the parties from time to time), shipment date, and other shipment information that are sufficient for Midea to

arrange shipment"—are to be provided by the purchase order, not the supply agreement. (Dkt. 10-1 at p. 294). The language of the supply agreement contemplates that the parties will separately assent to each purchase order and invoice.

Moreover, the evidence regarding the parties' conduct shows that the parties exchanged purchase orders and invoices in a manner indicating a separate assent to each purchase order and invoice. (Dkt. 10-1 at pp. 249–91). The record reflects that Corelle added its own "Purchase Terms and Conditions" to its purchase orders when it sent those purchase orders to Midea. (Dkt. 10-1 at pp. 261–63). The record further reflects that, in response to one purchase order sent by Corelle, Midea indicated that there would be changes to the look and the price of the ordered items. (Dkt. 10-1 at p. 265). The parties' apparent purchase-order-by-purchase-order contemplation of material terms supports the bankruptcy court's finding that the purchase orders are divisible from the supply agreement.

## IV.   CONCLUSION

The Court concludes that the bankruptcy court did not clearly err in finding that the purchase orders are divisible from the supply agreement. Accordingly, the Court **AFFIRMS** the bankruptcy court's judgment.

SIGNED at Houston, Texas on March 26, 2025.

_George C. Hanks Jr._
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE